# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| HEIN LATT ZAW, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 4:20-cv-01132 |
| I.Q. DATA INTERNATIONAL, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW comes HEIN LATT ZAW ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of I.Q. DATA INTERNATIONAL, INC. ("IQ"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian"), and TRANSUNION, LLC ("TransUnion") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq*., and IQ's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692 *et seq.*, and the Texas Debt Collection Act ("TDCA") under Tex. Fin. Code Ann. § 392 *et seq.*

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FCRA and FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1681p, 15 U.S.C. §1692, 28 U.S.C. §§1331 and 1337(a), as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Southern District of Texas, and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

### PARTIES

4. Plaintiff is a consumer over 18-years-of-age residing in Harris County, Texas, which is located within the Southern District of Texas.

5. IQ is a self-proclaimed "Professional Collection Agency, providing services to the apartment industry."[1]  IQ's principal place of business is located at 21222 30th Drive, Suite 120, Bothell, Washington 98028. IQ uses the mail, telephone, and credit reporting for the principal purpose of collecting debts from consumers on a nationwide basis, including consumers in the State of Texas.  IQ is also a furnisher of credit information to the major credit reporting agencies ("CRAs"), including co-Defendants Experian and TransUnion.

6. Experian is a consumer reporting agency that maintains credit information on approximately 220+ million U.S. consumers and 40 million active U.S. businesses.[2]  Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Texas.

7. TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing

---

[1] https://www.iqdata-inc.com/about-us
[2] https://www.experian.com/corporate/experian-corporate-factsheet.html

consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Texas.

8. Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

FACTS SUPPORTING CAUSE OF ACTION

9. In September 2019, Plaintiff began receiving unfamiliar calls to his cellular phone, (430) XXX-1021.

10. Upon answering, Plaintiff was greeted by an IQ representative, who informed Plaintiff that IQ is a debt collector seeking to collect upon an outstanding debt purportedly owed to Ladera Palms Apartments ("subject account").

11. Plaintiff never resided in any apartment complex by that name and did not incur the subject debt, so he notified IQ that he was not the individual it was looking for.

12. In early October 2019, Plaintiff accessed his consumer credit report and was taken aback when he noticed that the subject account was being reported on his credit file.

13. As a result, Plaintiff spoke with IQ and disputed the subject account.

14. IQ eventually sent Plaintiff supposed validation regarding the underlying account, but upon reading IQ's correspondence, Plaintiff immediately noticed the issue.

15. For example, IQ's letter was addressed to "Hein Zaw Chit," who is an individual with whom Plaintiff is unfamiliar.

16. IQ also provided the underlying lease agreement between Ladera Palms Apartments and the actual debtors.  In this agreement, all of the following parties were listed as signatories to the

lease: "Zaw Oo," "Myo Myo Chit," "Zaw Chit Hein," "Mi Mi Chit Oo," "Toe Toe Chit," "Zaw Mayo Thant," and Ei Ko Phvo."

17. None of those names belong to Plaintiff, and in fact, Plaintiff's name is not listed anywhere in any of the validation documents sent by IQ.

18. Accordingly, Plaintiff reiterated this information to IQ, and was told that the subject account would be removed, as it was confirmed that Plaintiff never signed a lease at Ladera Palms Apartments, and that IQ was collecting upon the wrong individual.

19. In spite of this, IQ continued placing calls to Plaintiff's cellular phone throughout the fall of 2019.

20. IQ mainly called Plaintiff using the phone number, (774) 257-6637, and upon information and belief, IQ regularly utilizes this phone number during its debt collection activities.

21. In October 2019, Plaintiff also initiated online disputes of the subject account with the CRAs.

22. Upon information and belief, IQ received notice of Plaintiff's online disputes within five days of Plaintiff initiating the written disputes with the CRAs. *See* 15 U.S. Code §1681i(a)(2).

23. On October 24, 2019, Plaintiff received reinvestigation results from Equifax Information Services, LLC ("Equifax"), who informed Plaintiff that the subject account "has been deleted from the credit file."

24. However, in TransUnion's reinvestigation results, which were provided on October 29, 2019, TransUnion stated that it "investigated the information [Plaintiff] disputed and the disputed information was VERIFIED AS ACCURATE," as seen below:

**IQ DATA INT'L INC #: IQD0PNE821852******
PO BOX 340
BOTHELL, WA 98041
(888) 248-2509

We investigated the information you disputed and the disputed information was **VERIFIED AS ACCURATE**. Here is how this item appears on your credit report following our investigation.

| Placed for Collection: | Responsibility: | Account Type: | Loan Type: |
|---|---|---|---|
| 08/05/2019 | Joint Account | Open Account | COLLECTION AGENCY/ATTORNEY |

| Balance: | DateUpdated: | Original Amount: | Original Creditor: |
|---|---|---|---|
| $6,160 | 10/05/2019 | $6,055 | LADERA PALMS APTS TX (Rental/Leasing) |

| Past Due: | Pay Status: |
|---|---|
| >$6,160< | >In Collection< |

Remarks:

ACCT INFO DISPUTED BY CONSUMR: >PLACED FOR COLLECTION<

Estimated month and year that this item will be removed: 05/2026

25. At that point, Plaintiff felt helpless, as he disputed the erroneous subject account directly with IQ, along with the CRAs, but yet, the subject account was still being reported on Plaintiff's Experian and TransUnion reports.

26. On or about March 3, 2020, Plaintiff initiated a second written credit dispute to TransUnion, along with Experian, in which he stated the following:

Hello,

There is an account incorrectly reporting on my credit report that needs to be corrected:

Please review and update the following account including Balance, Scheduled Payment Amount, Amount Past due, Status and Payment history.

IQ Data International IQD0PNXXXXX should not be reporting at all on my credit report as this trade line is not mine. I am not Zaw Oo, Zaw or Zaw Chit Hein. I have never levied at 4508 Regal Ridge Drive nor signed the lease in question that IQ Data claims is mine. My legal name is Hein Latt Zaw.

Please verify all info with Creditor and update my credit report.

Please correct as soon as possible.

Thank you,

Hein Latt Zaw

Enc. Energy Bill, SS Card

27. Plaintiff sent this dispute letter, along with his social security identification and proof of residence, to Experian and TransUnion via certified U.S. mail.

28. Upon information and belief, IQ received notice of Plaintiff's dispute within five days of Experian and TransUnion receiving notice of Plaintiff's written dispute. *See* 15 U.S. Code §1681i(a)(2).

29. On or about March 20, 2020, Experian responded by failing to reasonably investigate Plaintiff's credit disputes. Specifically, Experian informed Plaintiff that its investigation of the disputes is now complete, stating, "The information you disputed has been verified as accurate," as seen below:



30. Despite having actual knowledge that Plaintiff no longer had any obligation on the subject account, as well as after receiving Plaintiff's disputes, Defendants continued to incorrectly report the subject debt.

31. Any reasonable investigation engaged in by Defendants would and should have revealed the blatant inaccuracies reflected on Plaintiff's credit report.

6

32. The reporting of the IQ trade line is patently inaccurate and materially misleading, as the subject account belonged to a third party.

### IMPACT OF INACCURATE INFORMATION IN PLAINTIFF'S CREDIT FILE

33. The erroneous reporting of the subject account paints a false and damaging image of Plaintiff. Specifically, the inaccurate reporting of the subject account has had a significant adverse impact on Plaintiff's credit rating and creditworthiness because it misleads creditors into believing that Plaintiff has delinquent accounts and that he cannot honor his financial obligations, and is thus a high-risk consumer.

34. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to obtain financing and to regain a firm foothold on his creditworthiness, credit standing, and credit capacity.

35. As a result of the conduct, actions, and inactions of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out of pocket expenses, including specifically, the loss of credit opportunity, decreased credit score, decreased credit line on his credit card account, certified mail expenses, frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit files, and mental and emotional pain and suffering.

36. Due to the conduct of Defendants, Plaintiff was forced to retain counsel to correct the inaccuracies in his TransUnion and Experian credit files.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST IQ)

37. Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

38. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

39. IQ is a "person" as defined by 15 U.S.C. §1681a(b).

40. IQ is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

41. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

42. IQ violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from TransUnion, Experian, and Plaintiff.

43. IQ violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, provided by TransUnion, Experian, and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

44. Had IQ reviewed the information provided by Experian, TransUnion and Plaintiff, it would have corrected the inaccurate designation of the subject account, and transmitted the correct information to TransUnion and Experian. Instead, IQ wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

45. IQ violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation or reinvestigation of Plaintiff's disputes with TransUnion and Experian.

46. IQ violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion and Experian after being put on notice and discovering inaccurate and misleading reporting with respect to the subject account.

47. IQ violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information in Plaintiff's TransUnion and Experian credit files.

48. IQ failed to conduct a reasonable investigation of its reporting of the subject account, record that the information was disputed, or delete the inaccurate information from Plaintiff's

TransUnion and Experian credit files within 30 days of receiving notice of the disputes from TransUnion and Experian under 15 U.S.C. §1681i(a)(1).

49. Despite the blatantly obvious errors in Plaintiff's TransUnion and Experian credit files, and Plaintiff's efforts to correct the errors, IQ did not correct the errors or trade line to report accurately. Instead, IQ wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's dispute to one or more third parties.

50. A reasonable investigation by IQ would have confirmed the veracity of Plaintiff's dispute, as he never signed a lease with Ladera Palms Apartments, yet the inaccurate information remains in Plaintiff's TransUnion and Experian credit files.

51. Had IQ taken steps to investigate Plaintiff's valid disputes or TransUnion's and Experian's requests for investigation, it would have permanently deleted the erroneous and misleading credit reporting.

52. By deviating from the standards established by the debt collection industry and the FCRA, IQ acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion and Experian.

WHEREFORE, Plaintiff, HEIN LATT ZAW, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing IQ to immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST EXPERIAN)

53. Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

54. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

55. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

56. At all times relevant, the above-referenced credit reports were "consumer reports" as that term is defined by §1681a(d).

57. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

58. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

59. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

60. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

61. Plaintiff provided Experian with all relevant information in his request for investigation to reflect that the subject account was erroneously reporting, as he never incurred the underlying debt.

62. Experian prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the subject account as open and past due with a significant balance owed, when in fact, Plaintiff was not liable for the subject account.

63. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Experian prepared patently false and materially misleading consumer reports concerning Plaintiff.

64. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

65. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to IQ. Upon information and belief, Experian also failed to include all relevant information as part of the notice to IQ regarding Plaintiff's dispute that Experian received from Plaintiff.

66. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject account.

67. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

68. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from IQ that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

69. Experian knew that the inaccurate reporting of the subject account in Plaintiff's credit files under the IQ trade line would have a significant adverse impact on Plaintiff's credit worthiness and his ability to receive financing.

70. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

71. Despite actual knowledge that Plaintiff's credit files contained erroneous information, Experian readily sold Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

72. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

73. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

74. Experian's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting his credit information accurately.

75. Experian acted reprehensively and carelessly by reporting and re-reporting the erroneous subject account, when that account belonged to a third party.

76. Experian has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

77. As stated above, Plaintiff was severely harmed by Experian's conduct.

WHEREFORE, Plaintiff, HEIN LATT ZAW, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing that Experian immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

78. Plaintiff restate and realleges paragraphs 1 through 36 as though fully set forth herein.

79. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

80. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

81. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

82. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

83. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

84. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

85. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

86. Plaintiff provided TransUnion with all relevant information in his requests for investigation to reflect that the subject account was erroneously reporting, as he never incurred the underlying debt.

87. TransUnion prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the subject account as open and past due with a significant balance owed, when in fact, Plaintiff was not responsible for the subject account, as it belonged to a third party.

88. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, TransUnion prepared patently false and materially misleading consumer reports concerning Plaintiff.

89. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

90. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to IQ. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to IQ regarding Plaintiff's dispute that TransUnion received from Plaintiff.

91. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject account.

92. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete the inaccurate information that was the subject of Plaintiff's disputes.

93. TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from IQ that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

94. TransUnion knew that the inaccurate reporting of the subject account in Plaintiff's credit files under the IQ trade line would have a significant adverse impact on Plaintiff's credit worthiness and his ability to receive financing.

95. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

96. Despite actual knowledge that Plaintiff's credit files contained erroneous information, TransUnion readily sold Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

97. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

98. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

99. TransUnion's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting his credit information accurately.

100. TransUnion acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually in collections after Plaintiff put TransUnion on notice that he was not responsible for the subject account.

101. TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

102. As stated above, Plaintiff was severely harmed by TransUnion's conduct.

WHEREFORE, Plaintiff, HEIN LATT ZAW, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that TransUnion immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.   Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.   Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST IQ)

103. Plaintiff repeats and realleges paragraphs 1 through 52 as though fully set forth herein.

104. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

105. IQ is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

106. IQ identifies itself as a debt collector, and is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others. IQ has been a member of the Association of Credit and Collection Professionals, an association of debt collectors, since 2007.[3]

107. The subject account is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

### a.  Violations of FDCPA § 1692e

108. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

109. In addition, this section enumerates specific violations, such as:

> "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. §1692e(8); and

---

[3] https://www.acainternational.org/search#memberdirectory

"The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. §1692e(10).

110. IQ violated §1692e, e(8), and e(10) when it failed to accurately communicate to Experian and TransUnion that the subject account did not belong to Plaintiff, as Plaintiff never signed a lease with Ladera Palms Apartments.  Plaintiff has continuously disputed the validity of the subject account to IQ but despite multiple notices, IQ has continued to willfully communicate false credit information to Experian and TransUnion.

111. IQ also violated §1692e and e(10) by continuing to place phone calls to Plaintiff's cellular phone in an attempt to collect upon a debt that Plaintiff does not owe. IQ was aware of this information but willfully placed these calls in an effort to extract payment from a non-debtor.

**b. Violations of FDCPA § 1692f**

112. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

113. IQ violated 15 U.S.C. §1692f when it unfairly attempted to collect upon the subject account. Specifically, it was unfair for IQ to harm Plaintiff by communicating false information regarding the subject account, despite the fact that IQ knew that Plaintiff was not responsible for the subject account.

WHEREFORE, Plaintiff, HEIN LATT ZAW, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e.  Enjoining IQ from further contacting Plaintiff seeking payment of the subject debt; and

f.  Awarding any other relief as this Honorable Court deems just and appropriate.

<u>COUNT V – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT</u>
(AGAINST IQ)

114. Plaintiff restates and realleges paragraphs 1 through 52 as though fully set forth herein.

115. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

116. IQ is a "debt collector" and "third party debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

117. The subject account is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

**a.  Violations of TDCA § 392.304**

118. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(8), prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt . . ." The TDCA, under Tex. Fin. Code Ann. § 392.304(19), further prohibits a debt collector from "using any other false representation or deceptive means to collect a debt . . . ."

119. IQ violated the above referenced provisions of the TDCA through its failure to clearly and fairly communicate information about the subject account to Experian, TransUnion, and Plaintiff, as Plaintiff was not responsible for the subject account.

WHEREFORE, Plaintiff, HEIN LATT ZAW, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1).

c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d. Awarding Plaintiff  punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

f. Awarding any other relief as this Honorable Court deems just and appropriate.


Dated: March 30, 2020                              Respectfully submitted,

s/ Nathan C. Volheim (Lead Attorney)              s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. (3098183)                 Taxiarchis Hatzidimitriadis, Esq. (3098150)
*Counsel for Plaintiff*                           *Counsel for Plaintiff*
Admitted in the Southern District of Texas        Admitted in the Southern District of Texas
Sulaiman Law Group, Ltd.                          Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200               2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                           Lombard, Illinois 60148
(630) 568-3056 (phone)                            (630) 581-5858 (phone)
(630) 575-8188 (fax)                              (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                          thatz@sulaimanlaw.com